UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, | Case No. 15-cv-00212-MEJ |
| Plaintiff, | **ORDER GRANTING MOTION TO STAY AND DENYING MOTION TO DISMISS** |
| v. | |
| 20 PARKRIDGE, LLC, et al., | Re: Dkt. No. 13 |
| Defendants. | |

## INTRODUCTION

Plaintiff Atain Specialty Insurance Company ("Atain") filed this action seeking a declaratory judgment that it has no duty to defend or indemnify Defendants 20 Parkridge LLC, LHJS Investments LLC, Magnate Fund #2, or John Simonse ("Defendants") with respect to any claim arising out of litigation related to the conversion of an apartment building at 20 Parkridge Drive, San Francisco, California.  Compl. at 14, Dkt. No. 1.  Defendants have moved to dismiss the action pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), or alternatively to stay the case pending the resolution of the underlying action.  Dkt. No. 13.  Plaintiff has filed an Opposition (Dkt. No. 22), and Defendants have filed a Reply (Dkt. No. 27).  The Court held a hearing on this matter on April 30, 2015.  Dkt. No. 31.  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **DENIES** Defendants' Motion to Dismiss, but **GRANTS** Defendants' Motion to Stay for the reasons set forth below.

## BACKGROUND

Atain, an insurance company, brings this action against its insured, the Defendants, asking the Court to declare that its insurance policy excludes certain claims tendered by Defendants. Defendants argue that the Court should dismiss the action or abstain from making such a

determination at this stage.  The following factual background is taken from Atain's Complaint, except where otherwise noted.

Atain, formerly known as USF Insurance Company, issued insurance to 20 Parkridge LLC under Policy No. CIP91849 (the "Policy"), which provides commercial general liability coverage to the premises located at 20 Parkridge Drive, San Francisco, California (the "Property").  Compl. ¶ 11 & Ex. B.  The Policy became effective on October 19, 2010.  Compl., Ex. B.

On July 21, 2014, 20 Parkridge LLC tendered defense of claims asserted against it to Atain.  Compl. ¶ 18.  The month before, 20 Parkridge TIC ("TIC") sued 20 Parkridge LLC and the other Defendants in San Francisco Superior Court, *20 Parkridge TIC v. 20 Parkridge, LLC, et al*, Case No. CGC-14-539904 (the "Underlying Action").  *Id.* ¶ 13.  Atain alleges that the Underlying Action arises out of the conversion of the apartment building at the Property into residential condominiums (the "Project").  *Id. ¶* 14.  According to Atain, TIC seeks damages for injuries allegedly sustained as a result of defective conditions including, but not limited to: unintended water intrusion through the building envelope including windows, doors, exterior walls, flashing and roofs causing damage to the interior finishes and/or other property and other defects/deficiencies in the Project.  *Id. ¶* 15.  The Complaint filed in the Underlying Action asserts claims for Strict Liability; Negligence; Improper Distribution of Assets; Breach of Implied Warranty; Negligence Per Se; Breach of Contract-Third Party Beneficiary; Breach of Contract; Breach of Contract TIC Agreements.  *Id. ¶* 15 & Ex. C, Dkt. No. 1-3 ("State Court Compl.").  TIC's Complaint seeks special and general damages in excess of $5,000,000, attorney's fees, costs and expenses.  *Id. ¶* 15 & State Court Compl. at 21-23.

Atain initially declined 20 Parkridge LLC's tender, finding that three policy exclusions— the Classification Limitation Endorsement, the "Multi-Unit Habitational Conversion" exclusion, and the "Malpractice/Professional Services" exclusion—removed all potential for coverage for the claims asserted against 20 Parkridge LLC.  Compl. ¶ 19.  But on September 10, 2014, 20 Parkridge LLC provided Atain with a copy of a letter from TIC's counsel in the Underlying Action regarding certain deficiencies at the Property.  *Id. ¶* 20.  According to this letter, certain of

United States District Court
Northern District of California

2

the claimed deficiencies[1] existed prior to the time the apartment complex was converted to condominiums, and thus 20 Parkridge LLC argued that they fell within an exception to the "Multi-Unit Habitational Conversion." *Id.* On September 16, 2014, Atain accepted 20 Parkridge LLC's tender of defense, subject to a complete reservation of its rights to decline coverage and to seek a judicial determination of its coverage obligations. *Id.* ¶ 21 & Ex. D.

On October 21, 2014, counsel for 20 Parkridge LLC also tendered to Atain the defense of Defendants LHJS, Magnate, and Simonse. *Id.* ¶ 22. 20 Parkridge LLC contended that Defendants were insureds by definition under the Policy issued to 20 Parkridge LLC, as Defendants LHJS and Magnate are members of 20 Parkridge LLC, and Simonse is a member of both LHJS and Magnate. *Id.* ¶¶ 7-9. Magnate conveyed the Property to 20 Parkridge LLC around July 12, 2010, and LHJS manages 20 Partridge LLC. Waite Decl. ¶¶ 2-4, Dkt. No. 15. On December 15, 2014, Atain notified counsel for Defendants that in addition to providing a defense to 20 Parkridge LLC, Atain would also provide a defense to them. Compl. ¶ 25. On January 12, 2015, Atain formally accepted the tender of LHJS, Magnate, Simonse, and 20 Parkridge LLC subject to a complete reservation of its rights to decline coverage and to seek a judicial determination of its coverage obligations. *Id.*, Ex. E.

On February 11, 2015, Atain also tendered the defense of the Underlying Action to Dennis Lehane and Lehane Construction. Weschler Decl. ¶ 9 & Ex. I, Dkt. No. 16. 20 Parkridge LLC had previously entered into an agreement with Lehane Constructions to perform the repairs and construction at the Property. Waite Decl. ¶ 6 & Ex. C.

A dispute subsequently arose between Atain and Defendants regarding the coverage afforded under the Policy. Compl. ¶ 26. Atain believes that it has no duty to defend or indemnify

---

[1] These claimed deficiencies include (1) lack of fire stops at rated walls in the mechanical room; (2) improperly installed mechanical equipment including the boiler and HVAC system; (3) over spacing of balusters at deck guard rails; (4) exposed electrical; (5) improper installation of flashing; (6) lack of proper bracing for the wood planks on the fire escapes/patios; (7) boiler system aged and under capacity; (8) lack of handrails at stairs and transitions between hallways and stairs; (9) lack of telephone land lines; (10) lack of cable land lines and old abandoned cable lines; (11) lack of insulation for exposed hot water piping; (12) lack of shut off valves in common area fans in hallways; and (13) lack of proper bracing between fire escapes and decks at all units. Compl. ¶ 20

United States District Court
Northern District of California

United States District Court
Northern District of California

1  20 Parkridge LLC, LHJS, Magnate, or Simonse.  *Id. ¶¶* 26, 28.  At bottom, Atain contends that its

2  Policy does not cover the damage for which Defendants seek its defense and indemnity.  *See id.* ¶¶

3  33-34, 37, 40, 44, 48, 50.  It filed this action on January 15, 2015, requesting declaratory judgment

4  that it has no duty to defend (first cause of action) and no duty to indemnify (second cause of

5  action) Defendants in the Underlying Action.  *Id.* ¶¶ 30-61.

6          Defendants now file this Motion to Dismiss pursuant to Rule 12(b)(6).  Mot. at 6-10.

7  Alternatively, Defendants request that Atain's case for declaratory judgment be stayed pending the

8  outcome of the Underlying Action.  *Id.* at 10-15.  In the Underlying Action, the Superior Court

9  recently granted Defendants' petition to compel arbitration, as well as their motion to stay that

10  action pending the conclusion of arbitration.  Wechsler Decl. ¶ 8, Dkt. No. 16, & Ex. H, Dkt. No.

11  16-11.  No arbitration has been scheduled in the Underlying Action, nor any discovery conducted.

12  Wechsler Decl. ¶ 8.

13                                      **DISCUSSION**

14  **A.      Dismissal under Rule 12(b)(6)**

15          As an initial matter, the Court finds no grounds for dismissing this action at this time under

16  Federal Rule of Civil Procedure 12(b)(6).  Rule 12(b)(6) permits a party to file a motion to dismiss

17  based on the failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

18  "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient

19  facts alleged under a cognizable legal theory."  *Johnson v. Riverside Healthcare Sys.*, 534 F.3d

20  1116, 1121 (9th Cir. 2008) (quotations omitted).  While Defendants assert that Attain "has not and

21  cannot state a basis for declaratory judgment at this time, while the Underlying Action is pending,

22  and has been stayed pending judicial arbitration in the Superior Court[,]" Mot. at 7, the Court is

23  not persuaded that the presence of the underlying action necessarily removes Atain's ability to put

24  forward a cognizable legal theory.

25          Defendants' only significant argument on this front appears to be that the "first-to-file"

26  rule prevents Atain from pursuing this action at all because the Underlying Action was filed before

27  this action.  The first-to-file rule is "a generally recognized doctrine of federal comity" permitting

28  a district court to exercise its discretion to decline jurisdiction over an action.  *Inherent.com v.*

4

United States District Court
Northern District of California

1   *Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006) (citing *Pacesetter Sys., Inc. v.*

2   *Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982)); *see also Alltrade, Inc. v. Uniweld Prods.*

3   *Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) ("The most basic aspect of the first-to-file rule is that it is

4   discretionary.").  The rule is primarily meant to alleviate the burden placed on the federal judiciary

5   by duplicative litigation and to prevent the possibility of conflicting judgments.  *Church of*

6   *Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979) (citations omitted).

7   Courts analyze three factors in determining whether to apply the first-to-file rule: (1) chronology

8   of the actions; (2) similarity of the parties; and (3) similarity of the issues.  *Alltrade*, 946 F.2d at

9   625.  Atain filed this action after the Underlying Action, but as it notes, "Atain is not a party to

10  that action" and "[t]he state court is not being asked to determine insurance coverage issues; rather

11  the issues before the state court are whether Defendants caused the claimed damages and, if so, the

12  amount it will take to reimburse TIC for those damages."  Opp'n at 5.  As such, Atain argues that

13  its "coverage claims [cannot] be satisfactorily adjudicated in the Underlying Action."  *Id.*

14      The Court agrees.  Although exact identity of parties and issues is not required to satisfy

15  the first-to-file rule, *see discussion in Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d

16  1289, 1292-98 (N.D. Cal. 2013), Defendants have not shown that outright dismissal is appropriate,

17  by, for instance, demonstrating that the Underlying Action has such similar parties and issues that

18  this action is duplicative and unnecessary.  While some of the factual determinations to be

19  resolved in this action and the Underlying Action may overlap, given the current facts presented

20  and the record before the Court, the presence of the first-filed, Underlying Action does not

21  persuade the Court that dismissal is appropriate.

22      Otherwise, while Defendants make it clear that the Court has discretion in whether to

23  consider Atain's claims, they do not show how Atain fails to allege a cognizable legal theory or

24  what facts are lacking in the Complaint to state a claim for relief.  Rather, Defendants' challenge

25  to Atain's claims rest much more heavily on their arguments that the Court should exercise its

26  discretion to dismiss this action in favor of the Underlying Action or stay the case until that action

27  is resolved.  Given the lack of support for Defendants' 12(b)(6) argument, the Court will not

28  dismiss Atain's claims for failure to state a claim at this time.

**B.    Discretion to Hear Case under the Declaratory Judgment Act**

The Court now turns to the issue of whether to dismiss or stay this action brought under 28 U.S.C § 2201, the Declaratory Judgment Act.  "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The language of the Act is permissive, allowing that Courts "may declare the rights and other legal relations of any interested party."  28 U.S.C. § 2201(a).  "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action."  *Wilton*, 515 U.S. at 288.

In *Brillhart v. Excess Insurance Company of America*, the Supreme Court instructed that lower courts should avoid "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation" in deciding whether to "proceed to determine the rights of the parties" under the Act.  316 U.S. 491, 495 (1942).  "The *Brillhart* factors remain the philosophic touchstone for the district court."  *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc).  The *Brillhart* factors advise that federal courts should (1) avoid needless determination of state law issues; (2) discourage litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation.  *Id.*  "Essentially, the district court 'must balance concerns of judicial administration, comity, and fairness to the litigants.'" *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (quoting *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991)).  The Ninth Circuit has identified additional considerations:

> [W]hether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems.  In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Dizol*, 133 F.3d at 1225 n.5 (quotation omitted).  "[T]here is no presumption in favor of abstention

in declaratory actions generally, nor in insurance cases specifically." *Id.* at 1225.

While the *Brillhart* factors are the typical starting point, Atain argues that the Ninth Circuit's ruling in *United National Insurance Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1112 (9th Cir. 2001) removes the Court's discretion to dismiss this action, because in addition to Declaratory Relief, Atain requests that the Court ultimately "allocate between covered and non-covered claims so that it can seek reimbursement of any defense and indemnification expenditures allocated to those non[sic]-covered claims." Opp'n at 6 (citing Compl. ¶¶ 54, 61 & Prayer for Relief ¶ 3). Atain states that it "seeks to recover the amounts it has spent and will spend on defense and indemnification if its coverage position is correct." *Id.* at 4. Defendants did not address this issue in their Reply.

The Ninth Circuit has generally "applied the principle that 'when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief.'" *United Nat.*, 242 F.3d at 1112 (quoting *Dizol*, 133 F.3d at 1225). To determine whether jurisdiction over actions with both declaratory and monetary claims are discretionary or mandatory, the Ninth Circuit held that "[t]he appropriate inquiry for a district court in a Declaratory Judgment Act case is to determine whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case." *Id.* at 1112 (quotations omitted). More specifically, the Ninth Circuit held that "[t]he proper analysis . . . [is] whether the claim for monetary relief is independent in the sense that it could be litigated in federal court even if no declaratory claim had been filed." *Id.* at 1113. Stated another way, "the district court should consider whether it has subject matter jurisdiction over the monetary claim alone, and if so, whether that claim must be joined with one for declaratory relief." *Id.*

In *United National*, the plaintiff insurance company sought not only declaratory judgment about the terms of its policies but also reimbursement for the defense costs already advanced. *Id.* at 1107. As there was no dispute that the district court had subject matter jurisdiction over the

1  reimbursement claim, the Ninth Circuit determined that it only needed to resolve "whether the

2  request for reimbursement could have been sustained in federal court in the absence of any claim

3  for declaratory relief." *Id.* at 1113.  The Ninth Circuit found that under California law,

4  "[s]atisfaction of equitable rights for monetary relief has not historically been predicated on

5  favorable disposition of a claim for declaratory judgment." *Id.* at 1114.  Accordingly, the Court of

6  Appeals concluded that the request for reimbursement is independent of the request for declaratory

7  relief. *Id.* at 1113-14.

8          Considering the Ninth Circuit's determination in *United National*, the Court agrees that it

9  must exercise its diversity jurisdiction[2] over Atain's reimbursement claim because it is not

10  necessary that this claim be joined with Atain's declaratory judgment and declaratory relief

11  claims.  As the Ninth Circuit noted in *United National*, under California law, "[t]he insurer . . . has

12  a right of reimbursement that is implied in law as quasi-contractual, whether or not it has one that

13  is implied in fact in the policy as contractual." *Id.* at 1113 (quoting *Buss v. Superior Court*, 16

14  Cal. 4th 35, 51 (1997)).  Although there is no doubt that Atain's reimbursement overlaps with the

15  issues in its declaratory judgment claim, the determination of whether the Court's jurisdiction is

16  mandatory or discretionary is not focused on potential overlaps.  Rather, the only issue is whether

17  the Court could hear that claim even without the presence of the declaratory relief claims.  *See id*.

18  The Court is satisfied that it could.  Theoretically, Atain could dismiss all its claims under the

19  Declaratory Judgment Act and, exercising diversity jurisdiction, the Court could determine Atain's

20  reimbursement claims.  As noted, Defendants have provided no argument to the contrary.  As a

21  result, Defendants' request that this action be dismissed is denied.

22  **B.     Stay**

23          The Court now considers Defendants' alternative request, which asks the Court to stay this

24  action during the pendency of the Underlying Action.  A federal court sitting in diversity over a

25  state law claim applies the law of the state where it is located in order to determine whether a stay

26

27  _____

28  [2] The Declaratory Judgment Act does not provide an independent jurisdictional basis for suits in federal court. *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-74 (1950)).

United States District Court
Northern District of California

is appropriate. *U.S. Fidelity & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1133-34 (9th Cir. 2011). The Court therefore appropriately considers California law in determining whether to stay this case.

"A court considering whether to stay a declaratory relief action must . . . consider precisely which issues are to be litigated in order to resolve the declaratory relief action, and whether those issues are related to *factual* issues yet to be litigated in the underlying action." *Great Am. Ins. Co. v. Superior Court*, 178 Cal. App. 4th 221, 235-36 (2009) (citing *Haskel, Inc. v. Superior Court*, 33 Cal. App. 4th 963, 980 (1995) (emphasis in original)). In *Montrose I*, the California Supreme Court considered "what is at issue in an action seeking declaratory relief on the issue of the duty to defend." *Montrose Chem. Corp. v. Superior Court (Montrose I)*, 6 Cal. 4th 287, 300 (1993). It held that "[t]o prevail, the insured must prove the existence of a *potential for coverage,* while the insurer must establish *the absence of any such potential.* In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.*" *Id.* (emphases in original).

Therefore, "[t]o eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action." *Id.* at 301. "If the factual issues to be resolved in the declaratory relief action overlap with issues to be resolved in the underlying litigation, the trial court *must* stay the declaratory relief action." *Great Am.*, 178 Cal. App. 4th at 235. But "[i]f there is no such factual overlap and the declaratory relief action can be resolved on legal issues or factual issues unrelated to the issues in the underlying action, the question as to whether to stay the declaratory relief action is a matter entrusted to the trial court's discretion." *Id.* at 235-36.

*Montrose I* provided examples, including when a stay is appropriate and another case where a stay was not inappropriate. First, it found a stay is appropriate "when the third party seeks damages on account of the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct[.]" 6 Cal. 4th at 302. In that case, "the potential that the insurer's proof will prejudice its insured in the underlying

litigation is obvious[,]" and "[t]his is the classic situation in which the declaratory relief action should be stayed." *Id.* In contrast, the California Supreme Court cited *State Farm Mut. Auto. Ins. Co. v. Flynt*, 17 Cal. App. 3d 538 (1971) as an example where "the coverage question is logically unrelated to the issues of consequence in the underlying case." *Id.* In *Flynt*, the insured's stepson was involved in an accident while driving a stolen car, and his passenger brought a personal injury suit. 17 Cal. App. 3d at 541. But insured's automobile liability insurance policy made permission for use of the car a condition of coverage. *Id.* at 543-44. The *Montrose I* Court indicated that in such circumstances, "the question whether the owner had granted permission for the driver's use of the car was irrelevant to the [passenger]'s personal injury claim, and could properly be determined in the declaratory relief action independently of the timing of the third party suit." 6 Cal. 4th at 302. These examples are useful guideposts in how to assess whether the disputed coverage issues are consequential in an underlying case.

Additionally, there are three concerns courts have about the trial of coverage issues that necessarily turn on facts to be litigated in an underlying action:

> *First*, the insurer, who is supposed to be on the side of the insured and with whom there is a special relationship, effectively attacks its insured and thus gives aid and comfort to the claimant in the underlying suit; *second*, such a circumstance requires the insured to fight a two-front war, litigating not only with the underlying claimant, but also expending precious resources fighting an insurer over coverage questions-this effectively undercuts one of the primary reasons for purchasing liability insurance; and *third*, there is a real risk that, if the declaratory relief action proceeds to judgment before the underlying action is resolved, the insured could be collaterally estopped to contest issues in the latter by the results of the former.

*Haskel*, 33 Cal. App. 4th at 980 (citation and footnotes omitted; emphases in original). "It is *only* where there is no potential conflict between the trial of the coverage dispute and the underlying action that an insurer can obtain an early trial date and resolution of its claim that coverage does not exist." *Id.* (emphasis in original). The party seeking the stay has the burden of proving a stay is necessary. *Great Am.*, 178 Cal. App. 4th at 240-241.

1. <u>Factual Overlap Between This Case & the Underlying Action</u>

Atain contends that the insurance coverage issues can be resolved without touching on any

of the issues in the underlying litigation; Defendants disagree.  Atain cites four policy "exclusions" that it posits free it from defending and indemnifying Defendants in the Underlying Action, all of which it claims do not overlap with issues in that case.

a.      Exclusions with Exceptions for "Your Work"

First, Atain looks to its "Multi-Unit Habitational Conversion Exclusion," as well as its "Damage to Property" exclusion, at section j, paragraph (2).  Opp'n at 8-11.  Both of these exclusions have "exceptions"—i.e., provisions that would allow Defendants to maintain their coverage despite the exclusions.  *See* Compl., Ex. B.  One shared exception between these exclusions is for injuries or damages related to "your work."  *Id.* at 15, 29.  Specifically, the Multi-Unit Habitational Conversion Exclusion states that the exclusion does not apply to any of "your work" performed on a structure, which is defined as "[w]ork or operations performed by you or on your behalf; and . . . [m]aterials, parts or equipment furnished in connection with such work."  Compl. ¶ 43, Ex. B. at 27 & 59.  Likewise, the Damage to Property exclusion, section j, paragraph (2), does not apply if the premises are "your work" and "were never occupied, rented or held for rental by you."  Compl., Ex. B. at 16.  Without getting into the weedy specifics of these exclusions, the "your work" exception applies to both of them, and that exception appears to be the basis of Defendants' objection to proceeding with this case.

Specifically, Defendants contend that "whether [the defects in the Property] existed before commencement of the condominium conversion is an issue in both actions[.]"  Mot. at 12.  It asserts that Atain accepted the tender of defense because the presence of preexisting defects triggered its duty to defend and indemnify.  *Id.*  In its Complaint, Atain agrees that it received a copy of a letter from counsel for 20 Parkridge TIC that indicated that certain of the claimed deficiencies existed prior to the time the apartment complex was converted to condominiums.  Compl. ¶ 20.  20 Parkridge LLC thus argued that the exception to the Multi-Unit Habitational Conversion Exclusion applied, and shortly after, Atain agreed to defend 20 Parkridge LLC.  *Id.* ¶¶ 20, 21; Ex. D.

Atain contends that the issue of whether there were preexisting defects in the Property is a non-issue.  Opp'n at 7.  Specifically, it points to the Declaration of David Waite, in which he

United States District Court
Northern District of California

states that the design and construction defects and the deferred maintenance issues that triggered Atain's duty to defend existed prior to any construction or repairs related to condominium conversion. *Id.* (citing Waite Decl. ¶ 5).  Atain contends that the defects and maintenance issues existed at the time that Magnate purchased the Property in June 2010 and when Magnate transferred the Property to 20 Parkridge LLC in July 2010. *Id.* (citing Waite Decl. ¶¶ 3, 4).  Atain thus contends that because the defects existed before the condominium conversion and at the time Defendants acquired the Property, they are not "your work" as defined by the Atain policy. *Id.* at 9.  As such, it asserts that any damages arising from preexisting design and construction defects and deferred maintenance items do not fall within the exception to the Multi-Unit Habitational Conversion Exclusion. *Id.*  Consequently, Atain argues that "this exclusion applies, removing all potential for coverage for the claims asserted against Defendants in the Underlying Action, as a matter of law." *Id.*  According to Atain, "the facts upon which Atain's key coverage defenses rest are undisputed and the coverage questions may be determined as a matter of law." *Id.* at 7.

Defendants dispute Atain's assertions, contending that none of the parties presently know "[w]hether the defects and deferred maintenance issues identified by Mr. Waite are related at all to the vague 'defects'" for which 20 Parkridge TIC seeks damages in the Underlying Action.  Reply at 3.  Defendants note that in the Underlying Action, TIC has only ambiguously stated that it seeks damages for latent "design materials and/or construction defects." *Id.* (citing State Court Compl. ¶ 41).  Finally, Defendants note that the complaint in the Underlying Action indicates that some of its claims arise out of work that Defendants did or had others do after the conversion of the property. *Id.* (citing State Court Compl. ¶ 25: "Subsequent to the completion of the PROJECT the DEVELOPER DEFENDANTS, through Defendants, repaired, paid for repairs, or made promises to repair various deficiencies at the PROJECT[.]").  Defendants contend that "since there is a dispute as to what Defendants are alleged to have done or failed to do—and when they did it— Defendants should not be required to litigate those same factual issues in this action and the Underlying Action at the same time." *Id.*  They argue that "[a] finding in this action that such defects were not preexisting would be prejudicial to Defendants in the Underlying Action, and could have a collateral estoppel effect."  Mot. at 12.  While Defendants' argument focuses only on

12

United States District Court
Northern District of California

1    the Multi-Unit Habitational Conversion Exclusion, it applies similarly to the "Damage to

2    Property" exclusion, at section j, paragraph (2), as both involve determinations of "your work."

3            The Court finds that, under both these exclusions, determination of issues related to the

4    "your work" exception risks prejudicing Defendants in the Underlying Action.  Much of the

5    problem related to the determination of these policy exclusions is that the precise claims in the

6    Underlying Action are not entirely clear.  The complaint in the Underlying Action states that TIC

7    seeks damages to the Property, "which consist of, but are not limited to, damages to the common

8    areas, and damages to the separate interests which are within the [plaintiff]'s common interest,

9    power and standing[.]"  State Court Compl. ¶ 23.  The Court cannot determine precisely what

10   claims and factual determinations need to be made in the underlying case, and without that

11   understanding, it is inappropriate for the Court to find that the relevant facts in this case are

12   undisputed on the basis of Mr. Waite's Declaration.  Given these circumstances, the Court cannot

13   find that the continuation of this action would not impact or interfere with the determination of

14   that action.  *See AMCO Ins. Co. v. AMK Enters.*, 2006 WL 1980405, at *5 (N.D. Cal. July 13,

15   2006) (in a similar context, noting that "the Court cannot weigh these claims because it is at

16   present unclear what facts are disputed (or even alleged) in the underlying action.").

17           And to the extent the Court can determine the claims and factual grounds for the

18   Underlying Action, it finds that those claims could turn on facts that would also be necessary for

19   the resolution of whether the "your work" exception applies.  In other words, the "factual issues to

20   be resolved in the declaratory relief action overlap with issues to be resolved in the underlying

21   litigation."  *Great Am.*, 178 Cal. App. 4th at 236.  Having reviewed the Underlying Action's

22   complaint, the Court agrees with Defendants that "[t]here is a dispute in the Underlying Action as

23   to which damages are attributable to work done as part of the conversion and which damages are

24   not attributable to the conversion."  Reply at 4.  The letter from TIC's counsel concerning the

25   alleged deficiencies appears to confirm that such a dispute exists.  Additionally, given the similar

26   dispute in this action about what damage or defects occurred when and how, there risks a

27   substantial overlap of issues if both actions proceed simultaneously.

28           For instance, if Atain were to bring a summary judgment motion arguing that it had no

                                                    13

duty to defend, in order to prevail, it would need to establish the absence of any potential for coverage.  To defend against the application of the Multi-Unit Habitational Conversion Exclusion and the Damage to Property exclusion, section j, paragraph (2), Defendants would then be essentially forced to put forward evidence indicating that they fall within the "your work" exception to those exclusions, which would involve putting forward evidence about which defects in the property existed at what time and who was responsible for them.  This puts Defendants in an untenable position in relationship to the Underlying Action as it forces them to stake out positions and support those positions with evidence that risks impacting them negatively in the Underlying Action.  Given the substantial potential overlap between the two cases and their necessary factual determinations related to the Multi-Unit Habitational Conversion Exclusion and the Damage to Property exclusion, section j, paragraph (2), the Court cannot find that determination of this exclusion would not impact the Underlying Action.

### b.    Classification Limitation Endorsement

Atain's insurance policy also includes a "Classification Limitation" endorsement, which limits coverage under the policy only to those classifications described in the applicable Coverage Part or Schedule designated in the Declarations Page of the Policy.  Compl., Ex. B. at 42 ("This policy excludes coverage for any operation not specifically listed in the Coverage Part, Schedule or Declarations Page of this policy.").  As Atain notes, the Supplementary Declarations list only "apartment buildings" and "vacant buildings" as covered classifications.  Opp'n at 11 (citing Compl., Ex. B. at 11).  Atain asserts that "[b]ecause the claims for damages asserted against Defendants arise out of the operations for which no premium classification is listed on the policy, all potential for coverage for these claims is removed by the Classification Limitation Endorsement, as a matter of law."  *Id.* at 13.  The "operations" Atain refers to appear to relate to the conversion of the Property to condominiums.  *See id.* at 11-13.

The problem with Atain's argument is that it again assumes that all the purported damages arising from the Underlying Action are related to the condominium conversion alone.  While Atain could be correct, the Court agrees with Defendants that "[i]f the Plaintiffs in the Underlying Action are claiming damages for anything unrelated to the conversion itself then the Classification

14

Limitation Endorsement would arguably not apply." Reply at 5.  It is possible that the alleged injuries in the Underlying Action relate to the premises as the classifications described in policy declarations, i.e., from when the property was apartment buildings and vacant buildings.  To make a determination about whether the Classification Limitation endorsement applies to exclude Defendants from coverage, the Court must be able to understand the basis for the defects in the Underlying Action.  Understanding the nature of those defects could involve factual findings and determination of issues overlapping with the underlying case.

                    c.     *Professional Services Exclusion*

        The Policy also includes a Malpractice/Professional Services Exclusion, which precludes coverage for "property damage" arising out of the insured's rendering or failure to render professional services.  Specifically, it states that

> This insurance does not apply to: "Bodily injury," "property damage," or "personal and advertising injury" including payment for loss or defense costs in connection with any claim made against any insured based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the rendering or failure to render any professional service by, but not limited to, any Accountant, Architect, Engineer, Insurance Agent or Broker, Lawyer, Medical Professional or Real Estate Agent Broker or any other service that is of a professional nature.

Dkt. No. 1-2 at 52.  Despite it being their burden to establish that a stay is necessary, Defendants' briefing again provided no analysis as to this policy exclusion and how or whether it involves overlapping issues.  At the hearing, Defendants argued that they only hired Lehane to do construction work, and there has been no showing that Defendants conducted professional services.

        Otherwise, Defendants have indicated broadly that they are concerned that factual determinations made in this case could prejudice them in the Underlying Action, including determinations about "(1) the extent to which any of the claimed design and construction defects and deferred maintenance predated the commencement of work on the condominium conversion project, and (2) the fault and liability of Lehane Construction for such defects, as opposed to Defendants."  Mot. at 1.  Considering the nature of the Malpractice/Professional Services Exclusion, the Court shares Defendants' concerns that determining the applicability of that

United States District Court
Northern District of California

15

1    exclusion in this case requires making assessments as to when the defects arose and which party

2    had responsibilities and duties as a consequence, among other things.  For example, if in

3    defending their right to coverage, the Defendants put forward evidence about what actions they

4    took or did not take related to the Property, especially as compared with Lehane Construction, that

5    evidence could later be used against them in the Underlying Action, or could otherwise prejudice

6    them by estopping them from submitting other or additional evidence.  Thus, to counter Atain's

7    argument that no potential coverage can exist, Defendants would be at risk of prejudicing

8    themselves in the Underlying Action.

9         The Court also notes that this exclusion does not define what it means by "professional

10   services."  While Atain is correct that the Court may be able to determine the applicability of the

11   exclusion without such definitions, Opp'n at 13, Atain has not shown that such a determination

12   would not impact factual findings in the Underlying Action.  Where a professional services

13   exclusion is undefined, courts have found that "an insured's claim of coverage for 'professional

14   services' must be evaluated in light of all the relevant circumstances in which that claim arises,

15   including, but not limited to, the term's commonly understood meaning, the type and cost of the

16   policy, and the nature of the enterprise." *Hollingsworth v. Commercial Union Ins. Co.*, 208 Cal.

17   App. 3d 800, 806 (1989).  This inquiry requires factual determinations about the nature of

18   Defendants' business and how it performed in this context.  Additionally, while California courts

19   have defined "professional services" as those "'arising out of a vocation, calling, occupation, or

20   employment involving specialized knowledge, labor, or skill, and the labor or skill involved is

21   predominantly mental or intellectual, rather than physical or manual,'" they have also noted that

22   "the unifying factor" in applying the exclusion is based on "whether the injury occurred during the

23   performance of the professional services, not the instrumentality of injury." *Tradewinds Escrow,*

24   *Inc. v. Truck Ins. Exch.*, 97 Cal. App. 4th 704, 713 (2002) (quoting *Hollingsworth*, 208 Cal. App.

25   3d at 806; additional citations omitted); *see also Food Pro Int'l, Inc. v. Farmers Ins. Exch.*, 169

26   Cal. App. 4th 976, 991 (2008) (reading *Tradewinds* as finding that plaintiff must have been

27   "injured in the performance [or non-performance] of the professional service" by the insured for

28   the professional services exclusion to apply).  Such a determination in this case requires a greater

United States District Court
Northern District of California

16

understanding of the services Defendants provided, the actual injuries claimed in the Underlying Action, and the timing that Defendants may have rendered or failed to render the potential professional services.  This involves significantly more factual analysis than Atain acknowledges.

Ultimately, given the foregoing, the Court is not satisfied that it could analyze the above exclusion without making factual determinations that could collaterally estop Defendants as they proceed in the Underlying Action.

> d.      Summary

For all the aforementioned exclusions, the Court finds that "the factual issues to be resolved in the declaratory relief action overlap with issues to be resolved in the underlying litigation." *Great Am.*, 178 Cal. App. 4th at 236.  Thus, there is the "real risk that, if the [instant] action proceeds to judgment before the underlying action is resolved, [Defendants] could be collaterally estopped to contest issues in the latter by the results in the former." *Haskel*, 33 Cal. App. 4th at 979.

> 2.      Other *Montrose I* Factors

The other *Montrose I* factors also support a stay.  Atain requests that the Court make determinations about its Policy's exclusions, and in doing so, the Court would have to make factual assessments that are likely to impact the Defendants in the Underlying Action.  In this request, Atain "effectively attacks its insured[s] and thus gives aid and comfort to the claimant in the underlying suit."  *Haskel*, 33 Cal. App. 4th at 979 (citing *Montrose Chem. Corp. v. Superior Court (Montrose II)*, 25 Cal. App. 4th 902, 910 (1994), *as modified* (June 30, 1994)).  Additionally, California courts have also warned of the potential "prejudice" that "occurs when the insured is compelled to fight a two-front war, doing battle with the plaintiff in the third party litigation while at the same time devoting its money and its human resources to litigating coverage issues with its carriers."  *Montrose II*, 25 Cal. App. 4th at 910.  Atain's suggestion in opposing Defendants' motion to a stay is essentially that Defendants "fight a two front war."  While Atain suggested at the hearing that it could file a summary judgment motion without significant discovery, it has not shown the Court that this is possible.  From the Court's analysis, determination of all of the above exclusions requires more factual investigation and scrutiny than

17

1   Atain acknowledges. Defendants should not have to fight both in this action and the Underlying

2   Action, expending significant resources. To do so would undercut "one of the primary reasons for

3   purchasing liability insurance." *Id.* Accordingly, the Court finds that a stay of this declaratory

4   relief action pending resolution of the Underlying Action is appropriate. *See Montrose I*, 6 Cal.

5   4th at 301.

6       Finally, while the Court is not insensitive to the potential burden to Atain as a result of this

7   decision, Atain may still be able to seek reimbursement from Defendants in the event that

8   Defendants' claims are not ultimately covered by the Policy. *See Buss*, 16 Cal. 4th at 50-52; *see*

9   *also Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489, 502-03 (2001), *opinion after certified*

10  *question answered*, 10 F. App'x 563 (9th Cir. 2001). Much of the reason for the stay relates to the

11  lack of clarity currently available to the parties and this Court based on the complaint in the

12  Underlying Action. It is possible that the facts in the Underlying Action will establish that one or

13  more the Policy's exclusions apply, and under its reservation of rights, Atain may later seek

14  reimbursement from Defendants. Thus while the Court agrees with Defendants that a stay is

15  prudent here, Defendants should remain cognizant of the fact that a stay now does not secure an

16  ultimate resolution of this action in their favor.

17                              **CONCLUSION**

18      Given the foregoing analysis, the Court **STAYS** this case pending the outcome of the

19  Underlying Action. Defendants' Motion to Dismiss is therefore **DENIED** and their Motion to

20  Stay is **GRANTED**.

21      Further, all dates presently set on the Court's calendar in this action are **VACATED**. The

22  parties shall file a joint status report within 14 days of the resolution of the Underlying Action.

23      **IT IS SO ORDERED.**

24

25  Dated: May 11, 2015

26  _____

27  MARIA-ELENA JAMES
    United States Magistrate Judge

28

United States District Court
Northern District of California

18